IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Respondent/Plaintiff, )<br>vs. )<br> )<br>TERESA R. MARTIN, )<br>ID # 29517-177, )<br> )<br>    Movant/Defendant. ) | No. 3:02-CR-283-R<br>No. 3:05-CV-836-R (BH)<br>ECF |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

### I. BACKGROUND

**A. Nature of the Case**

Movant, an inmate currently incarcerated in the federal prison system, filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. The respondent is the United States of America (the government).

**B. Procedural History**

As a result of her plea of guilty to Count 1 of the indictment, defendant Teresa R. Martin was adjudged guilty of conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (h) and sentenced to 110 months' imprisonment. Martin timely filed a notice of appeal. On April 2, 2004, that appeal was dismissed on Martin's own motion. Her motion under 28 U.S.C. § 2255 was filed-stamped in this Court on April 26, 2005.

In her motion to vacate pursuant to 28 U.S.C. § 2255, Martin raises the following grounds:[1]

(1) her guilty plea was not knowing and voluntary because
    (a) counsel misled her and persuaded her to plead guilty at the last minute,
    (b) counsel told her that she would not be given a prison sentence,
    (c) counsel told her she could appeal her conviction, and
    (d) neither she nor counsel understood the essential elements of the crime;

(2) she received ineffective assistance of counsel when counsel failed to
    (a) conduct a reasonable pretrial investigation and investigate all avenues of defense,
    (b) identify, contact, or interview crucial defense witnesses,
    (c) present her alibi defense,
    (d) cross-examine the witnesses at sentencing, and
    (e) object to the method used to calculate the amount of laundered funds;

(3) she received ineffective assistance on appeal when neither trial nor appellate counsel prepared for and investigated the appeal process;

(4) her Sixth Amendment rights were violated when the Court
    (a) enhanced her base offense level by a preponderance of the evidence, and
    (b) sentenced her to a term of imprisonment beyond the statutory maximum; and

(5) the government engaged in prosecutorial misconduct because the underlying offense of 21 U.S.C. § 841 was neither charged nor proved, and "persecuted" her deliberately using documents while excluding "pertinent information in order to characterize the information and behavior associated with such as illegal."

(Motion, attachment pages.)

## II. STATUTE OF LIMITATIONS

Paragraph 6 of "28 U.S.C. § 2255 establishes a '1-year period of limitation' within which a federal prisoner may file a motion to vacate, set aside, or correct his sentence under that section." *Dodd v. United States*, 545 U.S. 353, 354 (2005). That paragraph provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

---

[1]Martin asserts grounds for relief in both the form motion and throughout the attachment pages.

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Except for those arising under *Booker v. United States*, 543 U.S. 220 (2005), all of Martin's claims in this motion assert challenges to the events surrounding her plea and imposition of sentence. Such claims are governed by, and the statute of limitations runs from, the date her conviction became final pursuant to ¶ 6(1). The question of whether Martin can invoke ¶ 6(3) based upon the *Booker* line of cases will also be addressed.

Martin filed a direct appeal from her judgment of conviction. With the assistance of counsel, she voluntarily dismissed that appeal on April 2, 2004, and the Court of Appeals for the Fifth Circuit issued its mandate that same day. Although Martin's motion under 28 U.S.C. § 2255 was file-stamped in this Court on April 26, 2005, she is entitled to the mailbox rule to determine when her motion was constructively filed.[2] Martin certified that she placed the motion under 28 U.S.C. § 2255 in the prison mailbox on April 20, 2005, so that is the date her motion is constructively filed under the mailbox rule. As April 20 is more than one year beyond the April 2, 2004 date that the

---

[2] A pro-se prisoner's habeas-corpus petition is constructively filed, for the purposes of the AEDPA, when the prisoner delivers the papers to prison authorities for mailing to the district court ("the mailbox rule"). *United States v. Patterson,* 211 F.3d 927, 930 (5th Cir. 2000) (2255), *citing Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir. 1998) (2254); *see also Sonnier v. Johnson,* 161 F.3d 941, 944-45 (5th Cir. 1998).

court of appeals dismissed the appeal, resolution of the limitations question hinges on whether the judgment became final under § 2255 ¶ 6(1) on that date, or upon the date when the time for seeking certiorari review with the Supreme Court expired.

In *Clay v. United States,* the Supreme Court held that for federal criminal defendants who do not file a petition for writ of certiorari, a judgment becomes final, and the one-year period starts to run when the time for seeking such review expires. *Clay,* 537 U.S. 522, 532 (2003). The Court of Appeals for the Fifth Circuit previously so held. *United States v. Gamble,* 208 F.3d 536 (5th Cir. 2000). Martin argues that these cases control and that she therefore had until one year from the time she could have sought certiorari review in the Supreme Court. Under this scenario, her motion under 28 U.S.C. § 2255 is timely.

The government contends that Martin's appeal was final the date her appeal was dismissed, and that her § 2255 motion was filed several days too late. It relies on *Gradsky v. United States,* 376 F.2d 993, 995 (5th Cir. 1967) and *First Gilbraltar Bank v. Morales,* 42 F.3d 895, 897 (5th Cir. 1995) for the proposition that the availability of an appeal is exhausted when the mandate issues. That authority, however, does not address the effect of Martin's voluntary dismissal of her appeal on § 2255 limitations. Further, although authority from the Court of Appeals for the Fifth Circuit recognizes that an appeal dismissed by an appellant before the appeal is docketed puts the appellant in the same position as if he had never actually filed a notice of appeal in the first place, *see Williams v. United States,* 553 F.2d 420, 422 (5th Cir. 1977), that is not the case here. Martin's appeal was voluntarily dismissed by her under Federal Rule of Appellate Procedure 42(b), after the appeal was docketed in the Court of Appeals for the Fifth Circuit. Thus, *Williams* does not control.

4

In *Flores v. United States*, the United States District Court for the Western District of Texas held that a conviction becomes final on the date the Fifth Circuit dismisses the appeal, though it noted the split in authority:

> *Clay* did not address when a defendant's conviction becomes final where he voluntarily dismisses his appeal without ever receiving an affirmation by the Court of Appeals. This Court concluded in *Lozano v. United States*, No. EP-01-CR-1000-DB, at 8 (W.D. Tex. April 14, 2005), that judgment became final on the date the Fifth Circuit Court of Appeals granted Lozano's motion to dismiss her direct appeal. The Court has only been able to locate a handful of other unpublished district court cases discussing the issue at any length. *See, e.g., United States v. Champion*, No. C-03-258(3), 2006 WL 1293566, at *3 (S.D.Tex. May 6, 2006) (noting that the determination of whether the judgment became final on the date the appeal was dismissed or 90 days past that date was crucial, the court concluded that in view of the uncertainty surrounding the issue of the motion's timeliness, the Court would address the claims on their merits, rather than dismissing the motion as barred by limitations); *United States v. Sylvester*, No. 3:CR-02-250 & No. 3:CV-05-286, 2006 WL 695796, at *2-*3 (M.D.Pa. Mar. 17, 2006) (concluding the conviction became final at time of dismissal); *Stern v. United States*, No. 2:05-CV-207, 2:02-CR-021 & 2:03-CR-056, 2005 WL 2922457, at *2 (S.D.Ohio Nov. 3, 2005) (concluding the conviction became final at time of dismissal), adopted by 2005 WL 3338704 (S.D.Ohio Dec. 8, 2005). But *see Baughman v. Erwin*, No. 1:05-CV-56, 2005 WL 2042998 (D.Vt. Aug. 9, 2005) (noting in dicta that judgment is final 90 days after highest state court grants motion to voluntarily dismiss appeal), adopted by 2005 WL 2277385 (D.Vt. Sept. 19, 2005); *Marshall v. Crosby*, No. 3:05CV207/LAC/EMT, 2006 WL 568341 (N.D.Fla. Mar. 7, 2006) (holding a conviction becomes final 90 days after appellate court grants motion to voluntarily dismiss appeal).

*Flores v. United States,* No.EP-06-CA-240-DB, EP-97-832-DB, 2007 WL 496711, at *3 n.20 (W.D. Texas Jan. 24, 2007); *see also Latham v.United States*, No.4-CV-4086-JPG, 2007 WL 129051, at *4-5 (S.D.Ill. Jan. 11, 2007) (holding judgment final when defendant voluntarily dismisses appeal).

This Court should also find that when an appeal is voluntarily dismissed, the judgment is final for § 2255 limitations purposes on the date of dismissal and issuance of mandate. Although the Court has found no published decision of the Fifth Circuit on this issue, the Fifth Circuit distinguished its

holding in *Gamble* affording the 90 day certiorari time period as applying to an appeal dismissed involuntarily in *United States v. Solis-Gonzalez*, 254 F.3d 1080, 2001 WL 563745, at *1 (5th Cir. May 9, 2001)(unpublished). It noted that "[e]ven if we were to consider the timeliness of appellant's petition, he would have difficulty persuading us that, although he voluntarily dismissed his appeal, the one-year period should be extended by the time limit for filing a petition for certiorari. *Id.*, 2001 WL 563745, at * 1, n1. Although *dicta,* this case is an indication that the Court of Appeals for the Fifth Circuit would not extend *Clay* and *Gamble* to a voluntarily dismissed appeal. Further, a decision of the United States Court of Federal Claims has specifically held that a party that moved to dismiss could not file a petition for a writ of certiorari in the Supreme Court. *Impresa Construzioni Geom. Domenico Garufli v. United States*, 73 Fed.Cl. 718, 722 (Fed. Cl. 2006), *citing Bryan v. Office of Pers. Mgmt.*, 165 F.3d 1315, 1321 (10th Cir.1999) (for proposition that plaintiff could not appeal the district court's order because she had voluntarily moved to dismiss); and *United States v. Procter & Gamble Co.*, 356 U.S. 677, 680 (1958) (stating the rule that "a plaintiff who has voluntarily dismissed his complaint may not sue out a writ of error").

The district court decisions in *United States v. Sylvester,* and *Latham v. United States* are also persuasive. The *Latham* court noted that the petitioner's "appeal proceedings were terminated not by a substantive decision of the Court of Appeals but pursuant to Latham's motion to dismiss his own case and 'waive all rights to object or raise any points on appeal.'" *Latham,* 2007 WL 129051, at 5. In making this determination, the court summarized extensively the analysis of *Sylvester:*

> The court in *Sylvester* provides the most complete and compelling analysis of all the cases the Court has located. It held that a judgment of conviction becomes final when "further direct review is foreclosed." *Sylvester*, 2006 WL 695796, at *3. Like the petitioner in this case, Sylvester voluntarily dismissed his appeal pursuant to Federal Rule of Appellate Procedure 42(b), then contended that the statute of limitations for

6

filing a § 2255 petition began to run 90 days later. Id. at * 1-*2. The court disagreed, noting that Sylvester's dismissal of his appeal was " 'an expression of the intent of the parties (principally, of course, the appellant) not to pursue the appeal any further and [brought] the appeal to an end.' " *Sylvester*, 2006 WL 695796, at *2 (quoting *United States v. Outen*, 286 F.3d 622, 631 (2d Cir.2002)). It further cited a Seventh Circuit case, *Barrow v. Falck*, 977 F.2d 1100 (7th Cir.1992), in support of the rule of finality that "appellate courts do not have jurisdiction over the merits of an appeal once the appeal is voluntarily dismissed." *Sylvester*, 2006 WL 695796, at *2. *Barrow* stated, "A notice of appeal filed and dismissed voluntarily is gone, no more effective in conferring jurisdiction on a court than a notice never filed." *Barrow*, 977 F.2d at 1103. The *Sylvester* court then reasoned that since a voluntary dismissal deprived the appellate court of jurisdiction to decide any issues, there were no issues for which a petition for a writ of certiorari could be granted and therefore the writ was unavailable. *Sylvester,* 2006 WL 695796, at *2. The court then concluded that since there was no avenue for direct review of any issue, the judgment of conviction of the district court became final when the appeal was dismissed. Id. The court formulated the general rule, consistent with *Clay*, that a "conviction becomes final when further direct review is foreclosed." *Latham,* 2007 WL 129051 at *3.

Based upon the persuasive analysis of these cases, and the indication from the Fifth Circuit that it would review the holding of *Gamble* differently in the context of a voluntarily dismissed appeal, this Court concludes that the date of Martin's voluntary dismissal of her appeal is the date of finality of her judgment for purposes of 28 U.S.C. § 2255 ¶ 6(1). Thus, all of Martin's claims arising from her plea and imposition of sentence are time-barred.

To the extent Martin raises claims under *Booker,* the Court construes such claim as an argument that the limitations period commenced as to such claim under § 2255 ¶ 6(3). The Supreme Court has defined the application of § 2255 ¶ 6(3):

> Paragraph 6(3) identifies one date and one date only as the date from which the 1-year limitation period runs: "the date on which the right asserted was initially recognized by the Supreme Court." [Defendant's] reliance on the second clause to identify the operative date is misplaced. That clause--"if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"--imposes a condition on the applicability of this subsection. See Webster's Third New International Dictionary 1124 (1993) (the definition of "if" is "in the event that" or "on condition that"). It therefore limits ¶ 6(3)'s application to

7

cases in which applicants are seeking to assert rights "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."§ 2255, ¶ 6(3). That means that ¶ 6(3)'s date--"the date on which the right asserted was initially recognized by the Supreme Court"--*does not apply at all* if the conditions in the second clause--the right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"--have not been satisfied. *Dodd v. United States,* 545 U.S. at 358 (emphasis added).

Under the Supreme Court's analysis in *Dodd,* even if the *Booker* opinion can be said to have created a newly recognized right, that fact does not trigger the running of limitations unless the "made retroactive" condition of the second clause has been met. After subjecting the *Booker* holding to the *Teague v. Lane,* 489 U.S. 288 (1989) retroactivity analysis, the Court of Appeals for the Fifth Circuit expressly held that "*Booker* does not apply retroactively on collateral review to an initial 28 U.S.C. § 2255 motion." *United States v. Gentry,* 432 F.3d 600, 601 (5th Cir. 2005); *see also United States v. Brown,* 305 F.3d 304, 310 (5th Cir. 2002) (holding that new rule of criminal procedure announced in *Apprendi* does not apply retroactively on initial collateral review); *see generally In re Elwood,* 408 F.3d 211, 213 (5th Cir. 2005) (*Apprendi, Blakely,* and *Booker* not retroactive for purposes of successive motions under 28 U.S.C. § 2255). Thus, the *Booker* opinion does not create a new commencement date for § 2255 limitations purposes under paragraph 6(3), and any claims by Martin under the *Booker* line of cases are also time-barred. *See generally United States v. Osborne,* No. Crim No. H-98-429-6, 2005 WL 1693942, at *4 (S.D.Tex. July 20, 2005) ("A section 2255 movant cannot take refuge in the limitations period set out at paragraph 6(3) to raise a late challenge under *Blakely* or *Booker.*")

In sum, the Court should dismiss all of Martin's claims as barred by the limitations provision in 28 U.S.C. § 2255, ¶¶ 6(1-4). In the event that the Court does not accept this recommendation, however, the merits of Martin's claims are also addressed below.

# III. INEFFECTIVE ASSISTANCE OF COUNSEL/
# VOLUNTARINESS OF GUILTY PLEA

Martin claims that the ineffectiveness of her counsel rendered her plea involuntary. Martin's plea agreement included a waiver of the right to contest her conviction and sentence in a post-conviction collateral proceeding such as this. (March 24, 2003, Plea Agreement at 4, ¶ 10.) Because controlling authority from the Court of Appeals for the Fifth Circuit holds that an ineffective assistance claim challenging the validity of a plea itself survives such a waiver, however, the waiver does not bar the Court's review of Martin's ineffective assistance claims that relate to the voluntariness of the plea agreement. *See United States v. White,* 307 F.3d 336, 343 (5th Cir. 2002).

The now-familiar two-pronged standard for review of claims of ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984): "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. This same test applies to challenges to guilty pleas based upon ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58 (1985).

In order to show the deficiency component, the burden is upon the defendant to show that his counsel's representation fell below an objective standard of reasonableness by identifying acts or omissions of counsel "that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id., Hill,* 474 U.S. at 57-58, *citing Tollet v. Henderson,* 411 U.S. 258 ((1973)

and *McMann v. Richardson,* 397 U.S. 759 (1970). There is a strong presumption that the performance of counsel falls within this range. *United States v. Samuels,* 59 F.3d 526, 529 (5th Cir. 1995); *see also King v. Lynaugh,* 868 F.2d 1400, 1405 (5th Cir. 1989). In order to prove prejudice in the plea process, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59.

Because a guilty plea relinquishes rights of the defendant, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Ordinarily, a waiver is entered knowingly, intelligently, and with sufficient awareness, when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances–even though the defendant may not know the specific detailed consequences of invoking it." *Id.* at 630. With "respect to a defendant's awareness of relevant circumstances, [the Constitution] does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id.* "[A] defendant need only understand the direct consequences of the plea; he need not be made aware [of] every consequence that, absent a plea of guilty, would not otherwise occur." *United States v. Hernandez,* 234 F.3d 252, 255 (5th Cir. 2000).

A guilty plea may be invalid if induced by a defense counsel's unkept promises. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998), *citing Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989). Ordinarily, however, "a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985) (quoting *United States v. Sanderson,* 595 F.2d 1021, 1022 (5th Cir. 1979). "Solemn declarations in open court carry a strong presumption of verity," and the "representations of the defendant, his lawyer, and the prosecutor at a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977). Any documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight." *See United States v. Abreo,* 30 F.3d 29, 32 (5th Cir. 1994).

Both Martin and her counsel signed the plea agreement and the factual resume. (Docket nos. 56 and 57). The plea agreement included an express declaration that the "plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement." (Plea Agreement at 4-5, ¶ 10.) Martin expressly agreed "[t]here have been no guarantees or promises as to what sentence the Court will impose." (Plea Agreement at 5, ¶ 10.) In that plea agreement, Martin acknowledged such things as: the maximum penalty for the offense to which she was pleading guilty is 20 years imprisonment and a fine not to exceed $250,000 or twice Martin's pecuniary gain (¶ 3); the Court would set the sentence (¶ 4); there was no agreement as to what the sentence would be (¶ 4); the Sentencing Guidelines applied to her case (¶ 4); she had reviewed the application of the guidelines with counsel but no one could predict with certainty what

11

the guideline range would be (¶ 4); she would not be able to withdraw her plea if the guideline range was higher than expected (¶ 4); she knowingly and willfully understated her taxable income on her 1997 and 1998 tax returns by $152,294.82 and $282,438.77, respectively, and the additional income represented the proceeds of drug funds she appropriated and spent (¶ 8); the truth of the factual resume (¶ 11); and that

> The defendant has thoroughly reviewed all aspects of this case with her attorney and is fully satisfied with that attorney's representation. The defendant has received meaningful and satisfactory explanations from her attorney concerning each paragraph of this plea agreement, each of her rights affected by this agreement and the alternatives available to her other than entering into this agreement. After conferring with counsel, the defendant has concluded that it is in her strategic best interest to enter into this plea agreement in its entirety rather than proceed to trial in this case. (¶ 12).

In the factual resume, Martin admitted that she (1) unlawfully conspired to store and conceal drug proceeds; (2) structured deposits of United States Currency representing drug proceeds into various bank account; (3) purchased negotiable instruments with drug proceeds; (4) disposed of drug proceeds by purchasing assets in order to conceal and disguise the nature and source of the proceeds; (5) used a legitimate business to conceal the drug proceeds; (6) obtained loans from financial institutions to conceal and disguise the nature and source of the drug proceeds; (7) spent approximately $152,294.82 in drug proceeds in 1997 and did not it on her income tax return and that such money represented unreported taxable income (8) spent approximately $282,438.77 of the drug proceeds in 1998 and did not report it on her income tax return and that such money represented unreported taxable income. (Factual Resume at 1-4.)

At the rearraignment hearing, Martin admitted she understood the constitutional rights she was voluntarily giving up by pleading guilty. (March 24, 2003, Rearraignment Transcript at 5-7.)

She testified that she entered the plea agreement voluntarily, of her own free will, and without any other threats or force. (March 24, 2003, Tr. at 13.) The Court found that her plea of guilty was knowing and voluntary, and made with the understanding of the charges and the maximum penalties involved. (March 24, 2003, Tr. at 15.) Martin also testified that she had reviewed the plea agreement with her counsel, had an opportunity to discuss the charges and her plea of guilty with him, and understood the plea agreement. (March 24, 2003, Tr. at 10.) Martin acknowledged that even though her attorney had explained the guidelines and given her an estimate of what the guideline range might be, that it was impossible to know what the guideline would be until after the Probation department did a calculation. (March 24, 2003, Tr. at 12.) She admitted that the Court would be the one to finally determine what her sentence would be. (March 24, 2003 Tr. At 13.)

In order for her to seek habeas relief on the basis of alleged promises that are inconsistent with the above recited representations made in open court, defendant Martin must "prove (1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise." *Harmason,* 888 F.2d at 1529, *citing Davis v. Butler,* 825 F.2d 892, 894 (5th Cir. 1987); *see also Cervantes,* 132 F.3d at 1110. An evidentiary hearing is necessary only if the defendant produces independent indicia of the likely merit of her claims, such as an affidavit from a reliable third party. *Harmason,* 888 F.2d at 1529, *citing Davis v. Butler,* 825 F.2d 892, 894 (5th Cir. 1987); *see also Cervantes,* 132 F.3d at 1110. No hearing is required if the defendant's showing is inconsistent with the bulk of her conduct. *Id.*

After review of the record, Martin has not made the sufficient showing to be entitled to a hearing or to establish her claims. She fails to show why the Court should not afford "great

13

evidentiary weight" to the documents she agreed to, and afford the "strong presumption of verity" to her prior sworn testimony that there were no promises or guarantees made to convince her to plead guilty. Although Martin alleges that both she and her husband co-defendant Frankie Martin plead guilty because they were told they would not be imprisoned and they could later appeal their convictions, this allegation is clearly belied by the records and Martin's testimony at the rearraignment. Martin has provided no independent indicia to support her allegation that counsel informed her she would not serve jail time and could later appeal. Further, her allegation is also not supported by Frankie Martin's own motion for relief under 28 U.S.C. § 2255. Frankie Martin pleaded guilty, and was rearraigned at the same time as Teresa Martin, after entering a virtually identical plea agreement and factual resume. In his motion for relief under 2255, he did not claim that his guilty plea was not knowing and voluntary or that he was told he would not receive a sentence of imprisonment. (Appendix to Supplemental Response, Frankie Martin Motion Under 28 U.S.C. § 2255.)

Otherwise, Martin makes inaccurate claims about the way her sentence was calculated to attempt to bolster her challenge to counsel's guidance regarding her entry of the plea agreement. In her reply to the supplemental response, Martin contends that as the probation officer referenced in the PSR that the Fason drug operation for which defendant laundered funds involved approximately three million dollars, counsel should have moved to withdraw the plea. In the factual resume, however, she acknowledged that she "participated in transporting and counting approximately three million dollars in United States currency derived from drug proceeds." (Factual Resume at 2.) Further, the reference to "three million dollars" was not used for the calculation of

Matin's sentence, as discussed below.

Although Martin alleges that counsel was unaware that the Court would make an upward departure without giving her notice, the Court did not depart from the guideline range. The guideline range as found by the Court was 97-121 months. (July 25, 2003, Sentencing Transcript at 35.) The 110 month sentence was within that range. Martin also alleges the Court made a 24 level upward departure. This too, is not correct. Martin's base offense level of 22 was enhanced by 10 levels before she was given a reduction of two levels for acceptance of responsibility. (Presentence Report ("PSR") ¶¶ 19-27.) The net effect was an increase of eight levels.

Martin also contends her base offense level should have been only six. United States Sentencing Guideline ("USSG") § 2S1.1(a)(2) sets the base offense level for a violation of 18 U.S.C. § 1956 at "8 plus the number of offense levels from the table in §2B1.1 corresponding to the value of the laundered funds." Although the PSR initially listed that defendant was responsible for laundering $508,933.59, after defendant's counsel raised objections to this amount, the government acknowledged to the probation officer that the amount of $434,733.59 was the accurate amount. (PSR ¶ 14; June 13, 2003, Second Addendum to the PSR.) The Court used this $434,733 amount to determine her sentence, applying USSG §§ 2S1.1(a)(2) and 2B1.1(b)(1)(H). (July 25, 2003, Sentencing Tr. at 15; PSR ¶ 19; Second Addendum to the PSR.) This $434,733.59 amount is the total of the $152,294.82 and $282,438.77 that Martin admitted in the plea agreement "represented the proceeds of drug funds appropriated and spent by the defendant." (Plea Agreement at 4, ¶ 8.) Any claim that counsel did not understand or properly advise Martin about the essential elements of the 'enhanced' crime is belied by the record.

15

In sum, the record is lacking any support for Teresa Martin's claim that she was misled by counsel and the her plea was therefore unknowing and involuntary. The Court should find that her claims of ineffective assistance of counsel with regard to the entry of the plea agreement are without merit, and find that her entry of the plea agreement was knowing and voluntary.

## IV. WAIVER OF RELIEF UNDER 28 U.S.C. § 2255

The government argues that Martin's remaining claims should be dismissed as barred by the effect of the waiver signed and agreed to by Matin. Martin's plea agreement included the following express waiver:

> The defendant hereby expressly waivers her right to appeal her sentence on any grounds, including any appeal right conferred by Title 18, United States Code, Section 3742, and the defendant further agrees not to contest her sentence in any post-conviction proceeding, including but not limited to a proceeding under Title 28 United States Code, Section 2255. (Plea Agreement at 4, ¶ 10.)

The Court of Appeals for the Fifth Circuit has held that "an informed and voluntary waiver of post-conviction relief is effective to bar such relief."[3] As the undersigned has concluded that Martin's entry of the plea agreement was knowing and voluntary, this waiver of the right to bring a § 2255 motion is valid and enforceable to bar all of Martin's remaining claims under 28 U.S.C. § 2255. This includes her other claims of ineffective assistance of counsel.[4] Thus, as to Martin's remaining claims that she received ineffective assistance of counsel, her Sixth Amendment rights were violated,[5] and

---

[3]*United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994).

[4]*See United States v. White,* 307 F.3d 336, 343 (5th Cir. 2002)(ineffective assistance claim survives a waiver only when the claimed assistance directly affected the validity of that waiver or the plea itself.)

[5]The fact that the *Booker* decision was not decided until after Martin signed the waiver does not place any *Booker* claim outside the scope of the waiver. *See See United States v. Bond*, 414 F.3d 542, 545 (5th Cir.2005) (holding that appeal waiver was broad enough to cover *Booker* claims); *United States v. McKinney,* 406 F.3d 744, 746-47 & n. 5 (noting agreement with other circuit courts that "*Blakely* [*v. Washington,* 542 U.S. 296 (2004)] and *Booker* do not alter the plain meaning of appeal-waiver provisions in valid plea agreements") (citations omitted); *see also United States v. Martinez,* CR.

16

the government engaged in prosecutorial misconduct, should be dismissed as barred by the waiver of her right to seek relief under 28 U.S.C. § 2255.

## V. EVIDENTIARY HEARING

Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary. No evidentiary hearing is required, when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief.

## VI. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 be **DISMISSED WITH PREJUDICE** as barred by the statute of limitations. In the alternative, the Court should **DENY** Martin's claims that her plea was not knowing and voluntary due to ineffective assistance of counsel, and **DISMISS WITH PREJUDICE** her remaining claims as barred by the waiver of her right to seek relief under 28 U.S.C. § 2255.

**SIGNED this 13th day of February, 2008.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

No. C-04-157 (C.A. No. C-05-423), 2006 WL 1293261, at *1,*7-8 (S.D.Tex. May 6. 2005) (determining that defendant's waiver of right to "contest his conviction or sentence by means of any post-conviction proceeding" included his *Booker* claim).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

  The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE